FILED
2020 Aug-24  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERICA GIBSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:17-CV-01792-KOB** |
| **BIRMINGHAM CITY SCHOOLS,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

This case arrived in this court after an altercation in a school, the details of which are not entirely clear.  Plaintiff Erica Gibson contends that a police officer working in the school physically assaulted her son, Adam Goodman, a Huffman High School student; she asserts that the assault injured Adam, forced him to withdraw from school, and resulted in harassment and retaliation from students, teachers, and staff.  Ms. Gibson filed a complaint on her then-minor son's behalf and as an individual, bringing several constitutional and state law claims based on the treatment of her son against Birmingham City Schools,[1] the City of Birmingham, and two Birmingham police officers, Officers Tyrone Polk and Richard Mason.

Now, the matter comes before the court on two motions for summary

---

[1] The court has now dismissed Birmingham City Schools as a Defendant in this case.

judgment filed by the Defendants.  Defendants City of Birmingham and Officer Mason jointly move for summary judgment on Ms. Gibson's claims, arguing that her claims fail factually and as a matter of law because she cannot show wrongdoing, and, even if she could, immunity would apply.  (Doc. 62).  Defendant Officer Polk likewise moves for summary judgment, arguing that he is shielded by immunity.  (Doc. 69).

All three Defendants also jointly filed a motion to strike Ms. Gibson's combined response to their motions for summary judgment because Ms. Gibson failed to comply with this court's requirements for briefs as set forth in the operative initial order.  (Doc. 74).  Ms. Gibson's brief does not follow this court's rules, as set forth in Appendix II to the court's initial order, requiring things like numbered statements of undisputed fact and clear citations to the record, so the Defendants request that the court strike her response.  (Doc. 11 at 14).

After considering the submissions of the parties, the court finds that Ms. Gibson cannot succeed on any of her claims against Officer Mason because she has not alleged, and the record does not show, that he engaged in any wrongdoing related to Adam.  Further, the court finds that Ms. Gibson likewise cannot succeed on her claims against the City of Birmingham because of factual deficiencies and the operation of immunity.  Finally, only Ms. Gibson's assault and battery claim against Officer Polk can survive summary judgment because the rest of her claims

either lack factual support or are foreclosed by immunity.

Accordingly, the court will grant the City of Birmingham and Officer Mason's motion for summary judgment. The court will also grant Officer Polk's motion for summary judgment on all of Ms. Gibson's claims against him except for her claim of assault and battery. The court will deny summary judgment only as to Ms. Gibson's assault and battery claim against Officer Polk.

Additionally, because Ms. Gibson makes no claims on her own behalf, the court will dismiss Ms. Gibson in her individual capacity as a plaintiff in this case. Finally, the court will deny the Defendants' motion to strike Ms. Gibson's response because Ms. Gibson did not file her deficient response in bad faith and her errors did not substantially prejudice the Defendants.

## I.    FACTUAL BACKGROUND

In the fall of 2016, Ms. Gibson's son Adam was a tenth-grade student at Huffman High School in Birmingham, Alabama. Adam was on probation at the time for having possessed a firearm.

In 2016, Officer Richard Mason and Officer Tyrone Polk were police officers for the City of Birmingham who were assigned to Huffman High School as School Resource Officers. Both Officer Mason and Officer Polk became SROs after having passed screenings and tests to become police officers; a panel of supervising Birmingham police officers then selected them as SROs and they

received specific SRO training.  SROs, like Officer Mason and Officer Polk, fall under the chain of command for the Birmingham City Police even when serving in schools.

At the center of this case lies an incident between Adam and the SROs—specifically Officer Polk—that took place on September 12, 2016 and began in the Huffman High School lunchroom.  The record, as established from surveillance footage from Huffman High School and corroborative testimony from the parties involved, shows that, on the day in question, Adam, wearing a hat, put one foot on a stool and one foot on a lunch table in the lunchroom, appearing to attempt to stand on the table.  The court notes that Adam testified that he simply got his lunch and sat down, but the video surveillance refutes that account.

Officer Mason and a teacher, Mr. Marzette, told Adam to stop and summoned him over to a lunch table where Mr. Marzette, Officer Mason, and Officer Polk were sitting.  Officer Mason talked to Adam and got information about his probation officer.  At one point, Officer Polk took Adam's hat.  Officer Polk and Adam also exchanged some heated words, though the record does not reveal with clarity the exact words or the extent of any animosity during the exchange.

Officer Polk walked out of the lunchroom, purportedly to go fill out a "counseling card" about the incident at Officer Mason's suggestion.  Adam walked

a different direction.  Surveillance footage then shows Officer Polk walking through a hallway holding Adam's hat shortly after leaving the lunchroom.  The video shows Adam walking through the same hallway about five seconds later going the same direction.  A little less than a minute after that, video of a different hallway shows Officer Polk walking to the SRO room with Adam trailing a short distance behind him.  Officer Polk unlocked the SRO door, Adam went in, and Officer Polk followed.  The court notes that Adam's testimony on the record conflicts with the video footage, as he says that Officer Polk approached him in the lunch room and they walked to the SRO room together.

While Adam and Officer Polk were in the SRO room, a physical altercation occurred.  No video exists from inside the room and the accounts of what happened differ.  Officer Polk testified in his deposition that Adam lunged at him and was acting aggressive, so Officer Polk grabbed him by the collar, pushed him against the wall, and later put his weight on Adam's back in a chair to subdue him.  Adam testified in his deposition that Officer Polk suddenly, without provocation, punched him in the back of the head, threw him to the ground, choked him, put a knee in his back where Adam has a previous bullet wound, and later punched him in the face and threw him against a wall.  Pictures of Adam after the incident show some marks on his neck and possible swelling or bruising to his face.

After Officer Polk and Adam had been in the SRO room for around eight

minutes, Officer Mason came and opened the door.  Officer Mason testified that

Officer Polk and Adam were not fighting when he came in, but Adam was visibly

upset.  Officer Mason sent Officer Polk out of the room and alerted school

administrators, who contacted Adam's mother Ms. Gibson.  Administrators also

called paramedics to attend to Adam; he did not require further medical attention.

Ms. Gibson met with Huffman administrators, including the principal and a

female SRO officer, as soon as she got to the school.  The principal suggested that

it might be in Adam's best interest for Ms. Gibson to withdraw Adam from

Huffman High School.  Ms. Gibson withdrew Adam from Huffman High School

that day and Adam did not return.  Following a full investigation of the incident,

the Birmingham Police Department suspended Officer Polk for 10 days.

Ms. Gibson then brought the instant lawsuit on her own behalf and as parent

and next friend of Adam, as he was a minor at the time.  Ms. Gibson filed an

amended complaint against Birmingham City Schools, the City of Birmingham,

Birmingham Police Officers Polk and Mason, and apparently—though the filing

does not clearly articulate the issue—the Birmingham Board of Education.  (Doc.

27).  The complaint contains claims for (1) excessive force; (2) false arrest in

violation of 42 U.S.C. § 1983; (3) false imprisonment in violation of § 1983; (4)

extreme and outrageous conduct; (5) assault and battery; (6) negligent and/or

wanton hiring, training and/or supervision; (7) violation of Adam's equal

protection rights; and (8) harassment and retaliation.

Birmingham City Schools filed a motion to dismiss and the court dismissed Ms. Gibson's claims against Birmingham City Schools and, to the extent it was included as a Defendant, the Birmingham Board of Education. (Doc. 51). The court dismissed the state law claims against Birmingham City Schools on immunity grounds and dismissed the remaining claims against Birmingham City Schools because Ms. Gibson's complaint had not indicated any School Board policies, customs, or practices that led to the alleged violations of Adam's rights. In granting the motion to dismiss, the court noted that Ms. Gibson's complaint "presents a classic 'shotgun pleading.'" (Doc. 51 at 4).

The remaining parties, including Defendants the City of Birmingham, Officer Mason, and Officer Polk, engaged in discovery. The City of Birmingham and Officer Mason then filed a motion for summary judgment; Officer Polk filed a separate motion for summary judgment. Ms. Gibson filed a joint response that did not comport with the requirements set forth in Appendix II to this court's initial order, and the Defendants all jointly moved to strike the response. The parties have fully briefed the motions for summary judgment and motion to strike, so they now come before the court.

## II.    STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law.  *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). But, inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm*

9

*Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.

## III.   DISCUSSION

Because two separate motions for summary judgment come before the court, one from the City of Birmingham and Officer Mason, and one from Officer Polk, the court will address some minor issues applicable to both motions and then will address the motions separately in turn.  Finally, the court will address the joint motion to strike filed by all three Defendants.

As a preliminary note to all analysis, the court will reiterate its point from its previous memorandum opinion in this case: Ms. Gibson's amended complaint presents a classic "shotgun pleading" in that it contains "multiple counts where each count adopts the allegations of all preceding counts" and "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).  The shotgun nature of Ms. Gibson's pleading renders this court's task more difficult than it should be, but the court will make its best effort to correctly parse her causes of action and any support for those claims.  But,

because Ms. Gibson has been represented by counsel throughout the proceedings, the court will *not* liberally construe her complaint as it would a complaint filed by a plaintiff acting *pro se*. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that *pro se* plaintiffs are entitled to liberal construction of their pleadings).

Moreover, the court will only address claims *actually raised* in Ms. Gibson's complaint, not claims that she raises for the first time in her response to the Defendants' motion for summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment; the plaintiff can only raise a new claim by amending her complaint in accordance with Federal Rule of Civil Procedure 15. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004). "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id.* Further, the court cannot *sua sponte* amend a plaintiff's complaint based on summary judgment arguments. *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). So, the court recognizes only the claims actually pled in Ms. Gibson's amended complaint.

With those frames of construction in mind, the court moves on to issues that both summary judgment motions have in common.

11

i.      Ms. Gibson's role as individual plaintiff

In both of the Defendants' motions for summary judgment, the Defendants

argue that the court should dismiss Ms. Gibson as a plaintiff in this case because

she does not actually assert any claims on her own behalf and Adam does not need

a next friend, as he has now reached the age of majority.  (Doc. 63; doc. 69; doc.

70).  Ms. Gibson did not clearly respond to the arguments.

Ms. Gibson's complaint lists her as a plaintiff both in her individual capacity

and as a next-friend for Adam.  As the Defendants point out, Ms. Gibson's

complaint does not allege any causes of action for herself, only for Adam.  (*See*

*generally* Doc. 27).  Further, Ms. Gibson did not address the issue in her response

to the motions for summary judgment and did not argue that she raised any claims

on her own behalf.

Where a nonmovant does not oppose an argument that the movant puts

forward in a motion for summary judgment, the court will deem the issue

abandoned.  *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th

Cir. 1995) (stating that grounds not argued on summary judgment are deemed

abandoned).  Thus, the court will DISMISS Ms. Gibson from the case in her

individual capacity because she raises no claims on her own behalf.

However, the court will not dismiss Ms. Gibson in her capacity as Adam's

guardian and next friend.  As an initial matter, while Ms. Gibson did not explicitly

12

set forth an argument regarding this issue, she did mention Adam's minor status on multiple occasions in her summary judgment response.  The court finds this sufficient to avoid abandonment of the issue and finds support to allow her to continue her suit as Adam's next friend because Adam was a minor at the time of filing the instant suit.

Generally, plaintiffs may not sue on behalf of third parties.  *See Warth v. Seldin,* 422 U.S. 490, 499 (1975).  But, Federal Rule of Civil Procedure 17(c) allows a guardian or next friend to sue on behalf of a minor child.  Fed. R. Civ. P. 17(c).  When Ms. Gibson originally brought this suit, Adam was a minor child and she was his guardian.  Accordingly, the court will allow Ms. Gibson to proceed as Adam's guardian and next friend under Rule 17(c) at this time but encourages the Plaintiff to move to substitute Adam as a party, as he has now reached the age of majority.  Further, the court notes that the Plaintiff currently lists Adam as a plaintiff in her summary judgment response without leave of the court, and, as such, should move to substitute Adam as Plaintiff.

ii.     *Ms. Gibson's harassment and retaliation claims*

In their motions for summary judgment, all three Defendants argue that the facts on the record clearly preclude Ms. Gibson's harassment and retaliation claims because she withdrew Adam from school immediately after the altercation that forms the basis for this case.  (Doc. 63; doc. 69; doc. 70).  In her response, Ms.

Gibson seems to argue that the altercation itself supported her harassment and retaliation claim.  (Doc. 72).

Ms. Gibson's complaint shows that she raised a claim for a pattern and practice of harassment and retaliation, and, as discussed above, the court will not liberally construe or amend her complaint at this stage.  *See Timson*, 518 F.3d at 874; *Gilmour*, 382 F.3d at 1314–15.  In her claims alleging harassment and retaliation, as pled, Ms. Gibson asserts that all of the Defendants "engaged in a pattern and practice of unlawful harassment by subjecting plaintiff to unwelcome harassment" that "created an intimidating, hostile, and offensive learning environment which interfered with plaintiff's emotional well-being and his ability to perform his school work."  (Doc. 27 at 12–13).  The complaint goes on to state that "as a result of the hostile and offensive school environment maintained by defendant and defendant officer's failure to protect plaintiff from further harassment and retaliation, plaintiff was forced to resign from Huff [sic] High School."  (*Id.* at 13–14).  The claim does not set forth a specific statutory scheme under which the claim should proceed.

Regardless of the particular legal theory under which Ms. Gibson seeks to recover for harassment and retaliation, the facts as shown by the record refute her claim.  Ms. Gibson alleges a pattern and practice of harassment and retaliation that affected Adam's learning environment and *forced* him to withdraw from Huffman

14

High School.  However, the facts as portrayed by the evidence on the record show

one adverse incident—Officer Polk's altercation with Adam on the day he

withdrew from school.  While Adam stated in deposition testimony that he was

expelled after the incident, Ms. Gibson testified in her deposition that she let Adam

believe he was expelled, but actually withdrew Adam from Huffman High School

the same day of the incident.  (Doc. 65-1 at 38; Doc. 66-1 at 90.  Moreover, Ms.

Gibson explicitly testified that no one forced her to withdraw Adam, she withdrew

him of her own volition at the principal's suggestion.  (Doc. 66-1 at 22–23).  She

also stated that no one made fun of Adam after she withdrew him from school.

These facts clearly refute Ms. Gibson's assertions that a pattern and practice

of retaliation existed or that she was forced to take Adam out of school.  The facts

show one adverse incident, after which Ms. Gibson immediately voluntarily chose

to withdraw Adam from school.  Because of his withdrawal, the incident could not

have affected Adam's learning environment.  Further, his withdrawal also means

he could not have experienced later retaliation or harassment at the school.

Therefore, the only things supporting a claim for a pattern and practice of

harassment and retaliation are Ms. Gibson's sweeping, unsupported allegations.  A

nonmovant's "mere conclusions and unsupported factual allegations" cannot

withstand a motion for summary judgment.  *Ellis v. England*, 432 F.3d 1321, 1327

(11th Cir. 2005).  Accordingly, Ms. Gibson has not shown the requisite facts for a

jury to find in her favor on her claims for harassment and retaliation.  Thus, the court will GRANT the Defendants' motions for summary judgment on that claim.

Because the rest of the Defendants' motions for summary judgment diverge, the court will address them separately.

### a. City of Birmingham and Officer Mason's Summary Judgment Motion

In their motion for summary judgment, the City of Birmingham and Officer Mason argue that Ms. Gibson has not stated a claim against either Defendant as a matter of law.  (Doc. 62).  More specifically, the Defendants argue that Ms. Gibson established no factual wrong-doing by Officer Mason, and, even if she had, he has qualified immunity for all federal claims and state agent immunity for all state law claims.  (Doc. 63).  The Defendants also argue that the City of Birmingham cannot be liable for Ms. Gibson's federal claims because it had no policies promoting or allowing the alleged violation of constitutional rights and has immunity against Ms. Gibson's claims under Ala. Code 11-47-190.

In her response, which does not comply with the rules set forth by this court for summary judgment briefs, Ms. Gibson spends paragraphs of argument impermissibly raising new information about Adam's socioeconomic situation and past trauma. (Doc. 72).  She argues that the City of Birmingham's policies contributed to Adam's harm in selecting Officer Polk as an SRO and in training SROs inadequately.  She also argues that Officer Mason contributed to Adam's

harm because he "failed to intervene to stop Polk from ordering Goodman to follow Polk to a private locked SRO room" after "witnessing Polk 'bow up' to physically engage Goodman in the cafeteria." (Doc. 72 at 6). She also asserts that the City of Birmingham can face liability on her state law claims under Ala. Code § 11-47-24.

In reply, the Defendants argue that Ms. Gibson cannot now add a failure-to-intervene claim that she did not include in her complaint. (Doc. 75). The Defendants also repeat their arguments that Officer Mason is entitled to immunity and argue that Ala. Code § 11-47-24 does not apply to willful conduct like assault.

In addressing the arguments in the City of Birmingham and Officer Mason's motion for summary judgment, the court will take the two Defendants in turn.

i.     *Officer Mason*

As far as the court can discern in reading the claims in Ms. Gibson's shotgun pleading, Ms. Gibson raises the following claims against Officer Mason in her amended complaint: (1) false arrest (2), false imprisonment, (3) extreme and outrageous conduct, (4) assault and battery, (5) violation of Adam's equal protection rights, and (6) harassment and retaliation. However, the court cannot be entirely sure that Ms. Gibson raises these claims against Officer Mason specifically, as Ms. Gibson sets out all of her claims against the SROs as being against "the Defendants"; not once in her causes of action does Ms. Gibson

mention Officer Mason by name. (Doc. 27 at 7–15). In light of this lack of specificity, the court finds Ms. Gibson's complaint utterly lacking in allegations against Officer Mason. Nevertheless, because this matter comes before the court on summary judgment rather than on a motion to dismiss, the court will turn to the facts on the record to examine Ms. Gibson's claims against Officer Mason.

As a preliminary matter, Ms. Gibson spends much of her summary judgment response attempting to support a claim for failure to intervene against Officer Mason. But, at no point in her complaint does Ms. Gibson mention a cause of action against Officer Mason, or any other defendant, for failure to intervene, and does not even allege excessive force, which could possibly encompass failure to intervene, against Officer Mason.[2] (*See generally* doc. 27). As discussed above, Ms. Gibson cannot now amend her complaint to include a new cause of action for failure to intervene. *See Gilmour*, 382 F.3d at 1314–15. Thus, any claim against Officer Mason for failure to intervene fails.

Normally, the court would begin addressing the claims in Ms. Gibson's complaint by setting forth the applicable legal standards for the causes of action alleged by Ms. Gibson. However, this case presents an exceptional circumstance in which the record so clearly belies Ms. Gibson's allegations against Officer Mason that the court finds a specific explanation of the law governing the causes

---

[2] Ms. Gibson's complaint mentions excessive force in the cause of action for violation of Adam's equal protection rights, but her actual cause of action for excessive force only mentions the City of Birmingham as a defendant, not Officer Mason or Officer Polk.

of action unnecessary.

Video evidence shows that Officer Mason did not touch Adam or threaten him in any way, and, further, shows that Officer Mason was not present in the room where Officer Polk purportedly assaulted Adam.  (Doc. 64-4).  Both Officer Mason and Officer Polk testified that Officer Mason was not in the SRO room at the time of Officer Polk's altercation with Adam; Officer Mason merely told Officer Polk to fill out a counseling card without knowing that Adam would go with Officer Polk to the SRO room or that anything would happen there.  (Doc. 64-1; doc. 64-2).  Moreover, Officer Mason specifically testified that he did not know whether Officer Polk asked Adam to leave the cafeteria with him; he also stated that Adam and Officer Polk left separately, so he had no chance to "intervene" in what happened between Adam and Officer Polk.  (Doc. 64-1 at 15, 22).

The evidence on the record from Adam and Ms. Gibson packs even more of a punch in terms of dismantling Ms. Gibson's claims against Officer Mason. Adam himself stated in deposition testimony that Officer Mason did not do anything to him and, in fact, intervened to protect him.  (Doc. 65-1 at 7).  He later testified that Officer Mason only helped him and that he did not sue Officer Mason; he went so far as to say that there was nothing that Officer Mason could have done to prevent what happened.  (*Id.* at 16, 20, 45).  Similarly, Ms. Gibson speculated in her deposition that Officer Mason *might* have known that something

bad happened in the SRO room, but testified that, to her knowledge, Officer Mason had not done anything inappropriate and had not violated Adam's rights.  (Doc. 66-1 at 12, 14, 17).

The record clearly shows—especially when read in combination with the lack of specific allegations in Ms. Gibson's complaint—that Ms. Gibson cannot succeed on any claim against Officer Mason because he did not violate any of Adam's rights, any federal laws, or any state laws.  The facts and inferences in this case, when viewed in the light most favorable to Ms. Gibson, simply do not show any potential cause of action against Officer Mason.  *See Graham*, 193 F.3d at 1282.  The only thing that Officer Mason did was help Adam.

Accordingly, Officer Mason has shown that Ms. Gibson cannot succeed on her claims against him.  Further, Ms. Gibson has not presented sufficient evidence on which a jury could reasonably find for her against Officer Mason.  *See Catrett*, 477 U.S. at 323; *Anderson*, 477 U.S. at 254.   Therefore, the court will GRANT Officer Mason's motion for summary judgment.

### ii.    *City of Birmingham*

As with the allegations against Officer Mason, the court begins by detailing the allegations against the City of Birmingham that the court can identify in Ms. Gibson's amended complaint.  Ms. Gibson raises claims against the City of Birmingham for (1) excessive force; (2) false arrest; (3) false imprisonment; (4)

20

extreme and outrageous conduct; (5) assault and battery; (6) negligent and/or wanton hiring, training, and or supervision; (7) violation of Adam's equal protection rights; and (8) harassment and retaliation.[3]  (Doc. 27).  The court will address the claims in turn, addressing her federal and state claims separately.

A. <u>Federal Claims under 42 U.S.C. § 1983</u>

Pursuant to 42 U.S.C. § 1983, Ms. Gibson brings federal claims against the City of Birmingham for (1) excessive force, (2) false arrest, (3) false imprisonment, and (4) violation of Adam's equal protection rights.  All of the claims arise from Officer Polk's altercation with Adam.  The court finds that, in this case, immunity shields the City of Birmingham from Ms. Gibson's federal claims.

Municipalities enjoy limited immunity from liability.  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 700 (1978)).  As set forth originally in *Monell*, courts can hold municipalities liable for a § 1983 violation only where the municipality "*itself* caused the constitutional violation at issue," not based on a theory of vicarious liability.  *Id.*

A municipality can be liable under § 1983 for the unconstitutional actions of its employees only where the municipality's "official policy" causes a

---

[3] As discussed above, the record clearly refutes Ms. Gibson's harassment and retaliation claim.

constitutional violation.  *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 694).  Without an officially promulgated policy, a plaintiff can also establish liability by pointing to "an unofficial custom or practice" shown by the repeated actions of a final policymaker.  *Id.* at 1329.

Defeating municipal immunity requires showing not only the existence of such a custom or practice, but that the custom or practice is the "moving force behind the constitutional violation."  *Id.* at 1330 (internal quotation marks omitted).  So, under the framework originally set forth in *Monell*, to show liability under § 1983 against the City of Birmingham Ms. Gibson must not just show constitutional violations by Officer Polk; she must show that City of Birmingham policies or practices *caused* the constitutional violations.

In her claim for excessive force, Ms. Gibson states that "it was the custom and policy of the Defendant, City of Birmingham, to train its police officers and officials to *properly* make arrests and to use a *reasonable* amount of force in the course of affecting an arrest."  (Doc. 27 at 7) (emphasis added).  She then stated that the policy proximately caused a violation of Adam's constitutional rights.  But, the very face of the policy cited by Ms. Gibson shows that the policy promotes the use of a *reasonable* amount of force, as opposed to excessive force that would qualify as a constitutional violation.  Ms. Gibson does not identify any other policies, formal or informal, relating to use of force.  Accordingly, she has

not shown that any policy of the City of Birmingham *caused* any excessive use of force against her son.

Further, Ms. Gibson fails to identify any other official policies promulgated by the City of Birmingham that could have caused any of the other constitutional violations alleged in her complaint.  (*See generally* Doc. 27).  In fact, both Ms. Gibson and Adam testified in their depositions that they had no knowledge of any Birmingham Police Department policies that might cause any alleged constitutional violations.  (Doc. 66-1 at 16; doc. 65-1 at 23).

The only other thing in Ms. Gibson's arguments that could possibly defeat municipal immunity is an assertion in her response to the motions for summary judgment that the City of Birmingham's "policies, customs, and practices in selecting and training" SROS caused the harm that Adam suffered.  (Doc. 72 at 5). In her argument in support of that assertion, Ms. Gibson relies on the fact that the City of Birmingham hired Officer Polk as an SRO despite previous disciplinary infractions, even though the City of Birmingham's applicable policies and regulations stated that SROs should "possess an even temperament and set a good example for students."  (Doc. 72 at 11).  Effectively, she argues that the purportedly inappropriate hiring of Officer Polk as an SRO was a policy, custom, or practice in and of itself that caused violations of Adam's constitutional rights.

But, as an initial matter, the court notes that Ms. Gibson does not

specifically mention a City of Birmingham policy regarding selection of SROs in her complaint and she cannot now amend her complaint at the summary judgment stage. *See Gilmour*, 382 F.3d at 1314–15. She does raise a claim—which appears to arise under state law—for negligent and/or wanton hiring, training and or supervision, apparently against the City of Birmingham. But, that claim does not mention any specific policy, custom or practice by the City of Birmingham; it only focuses on the alleged inappropriate hiring, supervision, or training of "incompetent agents or employees who committed some or all of the wrongful acts set forth in this complaint." (Doc. 27 at 10). Even if the court reads the complaint as containing sufficient allegations to support a claim for federal liability for negligent hiring or supervision by the City of Birmingham, that claim cannot succeed in light of Ms. Gibson's specific arguments and the evidence on the record.

In this case, the evidence conclusively shows that the City of Birmingham had no official policy or custom to select and train its police officers improperly. The record reveals that the City of Birmingham has its SROs undergo testing and training. As Ms. Gibson herself actually states, the City of Birmingham also requires as a matter of policy that SROs be even tempered and set a good example for students as well as maintain a safe environment for students. Accordingly, neither Ms. Gibson's allegations or the evidence on the record reveals an official

policy that could defeat municipal immunity as related to the incident between Officer Polk and Adam.

Because of her failure to identify an officially promulgated policy that caused Adam's injuries, Ms. Gibson must rely on specific facts to show an unofficial policy or custom of the City of Birmingham.  This court has already determined that Officer Mason engaged in no wrongdoing and Ms. Gibson does not produce evidence of any wrongdoing by any SROs other than Officer Polk; so, the only facts that Ms. Gibson references that can call the City of Birmingham's policies into question, and that can support her argument that the policies caused her son harm, relate only to the specific hiring, supervision, and training of Officer Polk and his single instance of alleged unconstitutional conduct against Adam.

A single instance of unconstitutional conduct can create *Monell* liability *only* when "proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Schmelz v. Monroe Cty.*, 954 F.2d 1540, 1544 (11th Cir. 1992) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).  Further, where a plaintiff alleges that a municipality has failed to train or supervise its employees, the plaintiff usually must show "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Gold v. City of Miami*, 151 F.3d 1346,

1350 (11th Cir. 1998).

Here, even viewing the record evidence in the light most favorable to Ms. Gibson, she has not identified *any* instances of potentially unconstitutional conduct outside of Officer Polk's interaction with Adam.  *See Graham*, 193 F.3d at 1282. Further, she has not shown *any* unconstitutional policy attributable to a policymaker that caused Officer Polk's behavior—instead, the record shows that generally the City of Birmingham carefully selects its SROs through a panel of Birmingham Police Officers and then requires the SROs to undergo additional training.  Therefore, the evidence indicates that, to the extent that Officer Polk should not have been hired or was poorly trained, he was "one 'bad apple,'" not an exemplar of municipal policies.  *Tuttle*, 471 U.S. at 821 (indicating that *Monell* should not impose liability for hiring "one 'bad apple.'")

Moreover, while Ms. Gibson references a few past disciplinary incidents with Officer Polk regarding other adults, she identified no other incidents in his role as an SRO.  Further, she also has not shown any incidents with other SROs that would have put the City of Birmingham on notice of the need to train SROs regarding the use of excessive force in school settings.  Thus, she cannot show that the City of Birmingham was on notice of the need to "train and/or supervise in a particular area," much less that it made a "deliberate choice" not to take action. *See Gold*, 151 F.3d at 1350.

Accordingly, no genuine issue of material fact exists regarding whether any City of Birmingham policies caused the alleged violations of Adam's constitutional rights.  Thus, the court will GRANT the City of Birmingham's motion for summary judgment on Ms. Gibson's claims under § 1983 because of municipal immunity under *Monell*.

B.  <u>State law claims</u>

Ms. Gibson also raises state law claims against the City of Birmingham for (1) extreme and outrageous conduct, (2) assault, and (3) negligent and/or wanton hiring, training and or supervision.  The City of Birmingham argues that it is entitled to immunity on Ms. Gibson's state law claims as a municipality because it is entitled to the same immunity as its agents and cannot face liability for willful or intentional tortious acts.  Ms. Gibson responds that the City of Birmingham can face liability on her state law claims under Ala. Code § 11-47-24, but the City of Birmingham repeats that the provision does not apply to willful or intentional conduct.  The court finds that immunity once again shields the City of Birmingham from liability in this case.

Generally, Alabama law grants immunity from liability to municipalities. *Ex parte City of Bessemer*, 142 So. 3d 543, 550 (Ala. 2013).  However, § 11-47-190 of the Alabama Code creates "an exception to the general rule of immunity for municipalities […] when a plaintiff has suffered injury as a result of 'the neglect,

27

carelessness or unskillfulness' of some agent." *Id.* But, that provision does *not* create "any exception to the general rule of municipal immunity from liability in the case of intentional or malicious actions by the agents or officers of the municipality." *Id.*

Here, Ms. Gibson alleges in her amended complaint that "the Defendants" committed extreme and outrageous conduct and assault and battery without specifying which defendants. (Doc. 27 at 8–9). The facts on the record demonstrate that the City of Birmingham had no direct involvement in touching or threatening Adam, so Ms. Gibson could only recover under a theory of vicarious liability. Under Ala. Code § 11-47-190, the court cannot hold the City of Birmingham, a municipality, liable for the actions of its agent who allegedly committed the torts of extreme and outrageous conduct and assault and battery because those torts qualify as intentional and, thus, incur municipal immunity. *See Ex parte City of Bessemer*, 142 So. 3d at 550; *Habich v. Crown Cent. Petroleum Corp.*, 642 So. 2d 699, 701 (Ala. 1994) (stating that a showing of the tort of outrage, otherwise known as intentional infliction of emotional distress, requires a showing of intentional or reckless conduct); *Dial v. City of Bessemer*, No. 2:14-CV-01297-RDP, 2016 WL 3054728, at *7 (N.D. Ala. May 31, 2016) (stating that a claim under Alabama law for assault and battery "clearly sounds in intentional conduct" and cannot form the basis of municipal liability). Accordingly, Ms.

Gibson cannot recover from the City of Birmingham for the tort of outrage or assault and battery allegedly committed by Officer Polk under a theory of vicarious liability.

Ms. Gibson also argues that she can recover from the City of Birmingham for Officer Polk's intentional torts because of the City's duty to indemnify as set forth in Ala. Code § 11-47-24, which states that a municipality must provide counsel for and indemnify any employee of the municipality where a suit for damages arises out of the performance of the employee's official duties.  Ala. Code. § 11-47-24.  However, that provision of the Alabama Code goes on to state that the municipality has no requirement to defend or indemnify municipal employees "sued for damages arising out of actions which were either intentional or willful or wanton."  Ala. Code § 11-47-24.  So, once again, Ms. Gibson cannot recover from the City of Birmingham for the tort of outrage or assault and battery because those torts necessarily entail intentional conduct that forecloses indemnification of its agent.  *See* Ala. Code § 11-47-24; *Habich*, 642 So. 2d at 701; *Dial*, No. 2:14-CV-01297-RDP, 2016 WL 3054728, at *7.

Finally, Ms. Gibson cannot succeed on her claim of negligent and/or wanton hiring, training, and or supervision.  First, the court notes that, though she does not specify against whom she makes this claim, it can only be against the City of Birmingham because the record contains no indication that either Officer Mason or

Officer Polk had any role at all in hiring, training, or supervision.  However, as with Ms. Gibson's other state law claims, her claim against the City of Birmingham for negligent supervision and hiring fails on immunity grounds.

Under Alabama law, where a municipal employee enjoys some sort of immunity, that immunity extends to the municipality.  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 742 (11th Cir. 2010) (citing *City of Bayou La Batre v. Robinson,* 785 So.2d 1128, 1131 (Ala. 2000)).  If the municipal employee is a law enforcement officer, as in this case, "Alabama's statutory, discretionary-function immunity explicitly extends an officer's immunity to the employing municipality." *Id.* (citing Ala.Code § 6–5–338(b); *Ex parte City of Gadsden,* 781 So.2d 936, 940 (Ala. 2000)).  Pursuant to the Alabama Code, a municipal law enforcement officer in Alabama has "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338(a).

The City of Birmingham produced testimony from multiple Birmingham Police Officers regarding the hiring, training, and supervision of SROs.  The City of Birmingham presented evidence that Birmingham City police officers, as part of their jobs, hired the police officers who became SROs, selected who became SROs, and oversaw the training and discipline of the SROs.  (Doc. 66-2; doc. 66-3, doc. 66-4).

Those officers who oversaw the hiring, training, and supervision enjoy immunity from tort liability arising out of that conduct because those duties are discretionary and fall "within the line and scope" of their law enforcement duties. *See* Ala. Code § 6-5-338(a).  That immunity enjoyed by the officers extends to the City of Birmingham as the employing municipality.  *See Brown*, 608 F.3d at 742. Ms. Gibson makes no actual, factually supported assertion that any officer in a hiring, supervisory, or training role engaged in any conduct outside of the scope of their discretionary employment that would preclude immunity.  Thus, Ms. Gibson cannot succeed on her allegation of negligent or wanton hiring, training, or supervision against the City of Birmingham.

The City of Birmingham has shown entitlement to summary judgment on all of Ms. Gibson's claims against it.  Accordingly, the court will grant its motion for summary judgment.

### b.  Officer Polk's summary judgment motion

In his motion for summary judgment, Officer Polk argues that Ms. Gibson cannot show false arrest because Adam was not arrested.  (Doc. 69; doc. 70).  He also argues that she cannot show equal protection violations and that the tort of outrage does not apply to this situation.  He asserts that all of Ms. Gibson's claims fail because they are all either factually deficient, barred by qualified immunity, or barred by state agent immunity.

31

In her response brief, Ms. Gibson argues that Officer Polk cannot claim immunity because he violated Adam's clearly established constitutional rights and acted outside of his discretion. (Doc. 72). She asserts that Adam's detention constituted an unlawful arrest and that Officer Polk used excessive force against Adam in violation of his constitutional rights. Ms. Gibson also argues that she has presented adequate support for her state law claims.

In reply, Officer Polk argues that Ms. Gibson's complaint does not include a claim of excessive force against Officer Polk, so she cannot now raise that argument. (Doc. 76). He further argues that Ms. Gibson cannot show an unlawful arrest based on the facts at issue. He repeats that Ms. Gibson has not shown outrage and that he is immune from her claims of false imprisonment and assault and battery.

Ms. Gibson appears to include the following causes of action specifically against Officer Polk in her amended complaint: (1) false arrest, (2) false imprisonment, (3) extreme and outrageous conduct, (4) assault and battery, (5) violation of Adam's equal protection rights, and (6) harassment and retaliation.[4] Once again, the court will address only the claims *actually raised* in Ms. Gibson's complaint and will not apply liberal construction because she was represented by counsel. *See Timson*, 518 F.3d at 874; *Gilmour*, 382 F.3d at 1314–15.

---

[4] As discussed above, the record belies Ms. Gibson's harassment and retaliation claim.

As such, the court will not examine a claim against Officer Polk for excessive force, despite the fact that Ms. Gibson makes an argument for a claim of excessive force against Officer Polk in her summary judgment brief.  (Doc. 72 at 17).  Ms. Gibson's excessive force claim in her amended complaint states that it is against "the Defendant, City of Birmingham" and only addresses the City of Birmingham's training policy.  (Doc. 27 at 7).  Ms. Gibson cannot now amend her complaint to add a claim for excessive force against Officer Polk.  *See Gilmour*, 382 F.3d at 1314–15.  The court will address in turn the claims against Officer Polk that Ms. Gibson actually raised in the operative complaint.

    i.    *False Arrest and False Imprisonment*

In her complaint, Ms. Gibson does not specifically state a factual basis for her cause of action against Officer Polk for false arrest or false imprisonment in violation of § 1983, but the court assumes from the facts that she refers to Officer Polk's interaction with Adam in the SRO room.  (Doc. 27 at 7–8).  The record shows that Adam was never actually arrested, which undercuts Ms. Gibson's claim for false arrest.  Nevertheless, claims for false arrest and false imprisonment overlap with each other because both involve the confinement of a person; the former claim "is a species of the latter."  *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007).  Accordingly, the court will address the claims together, despite Adam's lack of actual arrest.

33

A § 1983 "claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). To establish common law false imprisonment requires the plaintiff to show (1) an intent to confine, (2) an act resulting in confinement, and (3) the victim's awareness of confinement. *Id.*

"The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* (quotation omitted). To establish a violation of the due process right to be free from continued detention, a plaintiff must show that a defendant "acted with deliberate indifference to Plaintiffs' due process rights." *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007).

Deliberate indifference goes beyond just human error and requires a showing that a defendant had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence." *Cagle v. Sutherland,* 334 F.3d 980, 987 (11th Cir. 2003) (internal quotation marks and citation omitted) (alteration in original). The deliberate indifference standard rises to a level difficult for plaintiffs to meet; the burden is so high that courts can decide "*as a matter of law* whether Plaintiffs have carried their burden." *West*, 496 F.3d at 1327 (emphasis in original).

Here, the court need not examine the application of qualified immunity to

Ms. Gibson's false arrest and imprisonment claims because she cannot show false imprisonment as a matter of law. As an initial matter, nothing in Ms. Gibson's complaint or in the evidence shows an intent to confine Adam by Officer Polk or any awareness of confinement by Adam. The record does not indicate that Officer Polk told Adam that he could not leave the SRO room or that his actions were meant to keep Adam from leaving the room. Further, nothing indicates that Adam tried to leave the room or asked to leave. Accordingly, Ms. Gibson cannot make the necessary showing of an intent to confine or awareness of confinement, as required for the common law elements of a false imprisonment claim. *See Campbell*, 586 F.3d at 840.

Even if the court were to find that genuine issues of fact existed regarding Ms. Gibson's ability to show the elements of common law false imprisonment, the court finds that Ms. Gibson cannot, as a matter of law, make the requisite showing of a due process violation under the Fourth Amendment because she cannot show deliberate indifference. *See Campbell*, 586 F.3d at 840; *West*, 496 F.3d at 1327. First, as discussed above, nothing in Ms. Gibson's complaint or in the evidence indicates that Officer Polk had an intent to detain Adam, much less that he continued to detain Adam after he knew or should have known that he should release Adam from the SRO room. *See West*, 496 F.3d at 1327. Perhaps more importantly, nothing in Ms. Gibson's allegations or on the record speaks to Officer

35

Polk's *subjective* knowledge of a risk of serious harm or a disregard of that risk. *See id.* The only evidence of Officer Polk's subjective knowledge—Officer Polk's testimony—does not indicate any intention to detain Adam in violation of his rights. In fact, he stated that Adam was the one who followed him to the SRO room of his own accord. The evidence does *not* show any subjective understanding of a serious risk or of an intent to detain Adam.

Accordingly, the court finds that, based on the evidence on the record—even read in the light most favorable to Ms. Gibson—Ms. Gibson cannot show any issue of material fact that could allow her to show a due process violation as required to succeed on a claim for false arrest and false imprisonment under § 1983, even at the summary judgment stage. *See Graham*, 193 F.3d at 1282; Fed. R. Civ. P. 56. Thus, the court will GRANT summary judgment to Officer Polk on Ms. Gibson's claims for false arrest and false imprisonment.

ii.     *Equal Protection Violations*

Ms. Gibson raises a claim entitled "equal protection violation" against Officer Polk and the other Defendants in which she states that the actions of the Defendants deprived Adam of his Fourth and Fourteenth Amendment rights. (Doc. 27 at 10–11). While Ms. Gibson mentions Adam's rights to be secure from excessive force and his due process rights in the claim along with his equal protection rights, the claim is *clearly* labeled as an equal protection claim. As

36

mentioned above, because Ms. Gibson is not a *pro se* plaintiff the court will not liberally construe the labels of her claims or read extra claims into her shotgun pleading. *See Timson*, 518 F.3d at 874. So, the court will treat the claim as an equal protection claim, not an excessive force or due process claim.

The equal protection clause of the Fourteenth Amendment requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To plead a plausible equal protection claim, a plaintiff must show that similarly situated other people received more favorable treatment than the plaintiff and that the discriminatory treatment was based on some constitutionally protected interest, such as race. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001).

Here, Ms. Gibson has not proffered, and the evidence does not show, any comparator who was similarly situated to Adam and was treated more favorably. *See id.* She has also not shown that any adverse treatment that Adam received was based on a protected characteristic or interest. *See id.* Accordingly, Ms. Gibson has not stated a claim for a violation of Adam's equal protection rights as a matter of law. *See* Fed. R. Civ. P. 56. So, the court will GRANT Officer Polk summary judgment on Ms. Gibson's equal protection claim.

   iii.   *Extreme and Outrageous Conduct*

Ms. Gibson also raises a claim entitled "extreme and outrageous," in which

37

she alleges that the violation of Adam's constitutional rights constituted extreme and outrageous conduct.  (Doc. 27 at 8–9).  Alabama courts recognize the tort of outrage as identical to a claim for intentional infliction of emotional distress. *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, 266 So. 3d 674, 675 n.1 (Ala. 2017).

To recover under a claim for the tort of outrage in Alabama, a plaintiff "must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 676.  The allegedly outrageous conduct must "be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990).

The tort of outrage presents "an extremely limited cause of action" that Alabama courts have previously found in cases dealing with family burials, "barbaric methods used to coerce an insurance settlement," and "egregious sexual harassment." *Wilson*, 266 So. 3d at 677 (citing *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)).  But, the Alabama Supreme Court has recognized that Alabama law does not limit tort of outrage claims *exclusively* to those three circumstances. *Id.*

Here, Ms. Gibson's claim for the tort of outrage fails as a matter of law

38

because the conduct alleged, even read in the light most favorable to Ms. Gibson, does not fit within the "extremely limited cause of action" for intentional infliction of emotional distress.  *See Wilson*, 266 So. 3d at 677.

Viewing all of the facts and inferences from the evidence in Ms. Gibson's favor, Officer Polk punched Adam in the back of the head and in the face without provocation, knocked him to the ground, choked him, and pressed on an old bullet wound.   Illustrative circumstances that have not constituted the tort of outrage show why Officer Polk's conduct did not rise to the level of intentional infliction of emotional distress.

Courts have found that the following circumstances did *not* qualify as sufficiently outrageous to support a cause of action for tort of outrage:

> a law enforcement officer who coerced a prisoner into waiving her rights, lied that her attorney abandoned her, and threatened her with 'sizzling' and 'frying' in the electric chair, [ . . . ] a city council member said if 'things had gotten ugly' during a fight at a city hall, 'we'd be having [plaintiff's] funeral,' [ . . . ] a defendant abused, insulted, and threatened a plaintiff with wrongful foreclosure to collect a debt, [ . . . ] and a defendant threatened, abused, humiliated, and terminated an employee without cause, and thereby caused the employee's weight loss and insomnia.

*Holloway v. Oxygen Media, LLC*, 361 F. Supp. 3d 1213, 1224 (N.D. Ala. 2019) (internal citations omitted).  All of those cases, which did not show sufficiently outrageous conduct to amount to the tort of outrage, still involved more of an outrageous and emotional component than the case at hand.  Officer Polk's

interaction with Adam, while regrettable, simply does not rise to the level of such atrocity as to go "beyond all possible bounds of decency" and so as to "be regarded as atrocious and utterly intolerable in a civilized society." *See Green Tree Acceptance, Inc.*, 565 So. 2d at 44.

To state the issue differently, Officer Polk's alleged treatment of Adam lacks the sort of shock to the conscience necessary to render it analogous to situations involving family burials, barbaric insurance methods, or extreme sexual harassment. *Wilson*, 266 So. 3d at 677. His conduct, at worst, was more run of the mill assault. Accordingly, the court finds that Ms. Gibson cannot succeed on her claim of the tort of outrage as a matter of law and the court will GRANT Officer Polk summary judgment on that claim. *See* Fed. R. Civ. P. 56.

iv.    *Assault and Battery*

Finally, Ms. Gibson raises a claim against Officer Polk for assault and battery under Alabama state law. (Doc. 27 at 9). "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'" *Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010) (quoting *Harper v. Winston County*, 892 So. 2d 346, 353 (Ala. 2004)).

In this case, the undisputed evidence shows that Officer Polk intentionally

touched Adam.  Officer Polk admitted in his deposition testimony that he grabbed
Adam by the collar and held him down in a chair.  Further, pictures of the marks
on Adam's neck indicate that Officer Polk's intentional touching of Adam was
harmful.  So, Ms. Gibson can make out a *prima facie* showing of assault and
battery under Alabama law.  *See Walker*, 62 So. 3d at 494.  Thus, the question
becomes whether Officer Polk can show that he is entitled to immunity for his
actions.

Under Alabama law, "[s]tate-agent immunity protects state employees, as
agents of the State, in the exercise of their judgment in executing their work
responsibilities." *Ex parte Hayles,* 852 So. 2d 117, 122 (Ala. 2002).  A plurality of
the Alabama Supreme Court clarified the scope of Alabama state-agent immunity
in *Ex parte Cranman,* 792 So.2d 392, 405 (Ala. 2000); the court stated that the
doctrine bars suits against law enforcement officers performing their duties, except
where the officer acted "willfully, maliciously, fraudulently, in bad faith, beyond
his legal authority, or under a mistaken interpretation of law, or if the Constitution
or laws of the United States or Alabama require otherwise."  *Brown v. City of
Huntsville, Ala.*, 608 F.3d 724, 740–41 (11th Cir. 2010) (explaining *Cranman*).

Additionally, as discussed above, § 6–5–338 of the Alabama Code contains
a provision immunizing law enforcement officers from tort liability for conduct
within the scope of their discretionary law enforcement duties.  Ala. Code § 6-5-

338(a). *Cranman*'s test for state-agent immunity applies to determine whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a). *See Ex parte City of Tuskegee,* 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman,* 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)."). So, the question of whether Officer Polk can show entitlement to immunity for Ms. Gibson's state law claim for assault and battery depends on the application of *Cranman*'s state-agent immunity test.

The Alabama Supreme Court has established a burden-shifting framework for application of the state-agent immunity test set forth in *Cranman*. *Brown*, 608 F.3d at 741. A defendant bears the initial burden of demonstrating that he was acting in a function that would entitle him to immunity. *Ex parte Estate of Reynolds,* 946 So. 2d 450, 452 (Ala. 2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.*

Here, Officer Polk was a police officer potentially entitled to immunity under § 6-5-338(a) and *Cranman*. Officer Polk has also produced evidence that he was acting within his discretion as an SRO, which could entitle him to immunity. *See Ex parte Estate of Reynolds,* 946 So. 2d at 452. But, at the summary judgment

stage and reading all of the evidence in the light most favorable to her, Ms. Gibson

has potentially shown that Officer Polk acted willfully and maliciously such that

immunity does not apply.  *See id.; Graham*, 193 F.3d at 1282.

Adam testified in his deposition that Officer Polk punched and choked him

without provocation.  Although the entirety of the record—particularly the

surveillance footage in the record—calls Adam's credibility into question, no

definitive evidence exists of what happened in the SRO room—only the conflicting

testimony of the two involved—and the court cannot make credibility

determinations at the summary judgment stage.  *See Anderson*, 477 U.S. at 254.

Thus, a genuine issue of material fact exists regarding whether Officer Polk's

actions went beyond his discretionary authority and into the realm of willful and

malicious.  If his actions were willful and malicious, he would not be entitled to

state-agent immunity.  *See Ex parte Estate of Reynolds,* 946 So. 2d at 452.

Accordingly, Ms. Gibson has adequately shown willful and malicious harmful

touching to get past the summary judgment stage on a state law claim of assault

and battery against Officer Polk.  *See* Fed. R. Civ. P. 56.  Thus, the court will

DENY Officer Polk's motion for summary judgment solely on Ms. Gibson's

assault and battery claim.

### c.   Joint Motion to Strike

As a final note, the Defendants all jointly move to strike Ms. Gibson's

response to the Defendants' motions for summary judgment.  (Doc. 74).  The

Defendants argue that the court should strike the response brief because it does not

comply with this court's initial order, (doc. 11), as the response did not include

numbered paragraphs of facts and did not included specific citations to the exhibits

on the record.  Further, the Defendants note that Ms. Gibson filed the evidentiary

submissions for her response slightly after the imposed deadline.  The Defendants

assert that the court should strike the response because it rendered the Defendants

unable to properly file reply briefs.  The court notes, however, that the Defendants

did, in fact, file adequate reply briefs that the court considered.

This court entered an order to show cause why it should not grant the

Defendants' joint motion to strike.  (Doc. 77).  Ms. Gibson filed a response arguing

that the formatting errors were not intentional, were not in bad faith, and did not

prejudice the Defendants.  (Doc. 78).  Ms. Gibson also submitted a corrected

version of her response brief.  (Doc. 78-2).

Upon consideration of the parties' filings, the court will deny the motion to

strike.  While Ms. Gibson's brief did not strictly comply with the requirements of

Appendix II, it did provide adequate notice of Ms. Gibson's arguments for the

Defendants to file competent reply briefs.  Further, Ms. Gibson must bear the

consequences of her lack of clear citations in her response brief.  In opposing

summary judgment, the plaintiff bears the responsibility "to point to the specific

portions of the proffered material which created a material issue of fact," and the court is not required to "search the record" for an unidentified issue of material fact to support a claim. *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 n.5 (11th Cir. 1995). Thus, the court did not exhaustively search the record for citations to support Ms. Gibson's case. The court finds the prejudice to Ms. Gibson roughly equivalent to any prejudice to the Defendants arising from Ms. Gibson's failure to comply with this court's briefing requirements. Thus, the court will deny the Defendants' motion to strike for lack of prejudice.

## IV.   CONCLUSION

By separate order, the court will DISMISS Ms. Gibson in her individual capacity as a plaintiff in this case because she alleges no causes of action on her own behalf; she will continue as next friend for her son Adam, who was a minor at the time of filing, at least until she moves to substitute Adam as Plaintiff. Further, the court will GRANT the motion for summary judgment filed by the City of Birmingham and Officer Mason because Ms. Gibson cannot succeed on any of her claims against them as a matter of law.

The court will likewise GRANT IN PART Officer Polk's motion for summary judgment as to all of Ms. Gibson's claims against him *except* for her claim of assault and battery. However, the court will DENY IN PART Officer Polk's motion for summary judgment solely as to the assault and battery claim.

Finally, the court will DENY the Defendants' joint motion to strike Ms. Gibson's response brief, as the response's failure to comply with this court's requirements did not substantially prejudice the defendants.  The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 24th day of August, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE